| Civil DOCKET | DOCKET NUMBER 200456CV002682 | Trial Court of Massachusetts District Court Department |
|---|---|---|
| **CASE NAME** JOHN GACHAGO vs. BRISTOL MYERS SQUIBB | | **CURRENT COURT** Quincy District Court 1 Dennis Ryan Parkway Quincy, MA 02169-5348 (617) 471-1650 |
| **ASSOCIATED DOCKET NO.** | **DATE FILED** 12/20/2004 | **DATE DISPOSED** 00/00/0000 |

FILED IN CLERKS OFFICE
2005 FEB 18
U.S. DISTRICT COURT
DISTRICT OF MASS.

**PLAINTIFF(S)**

P01   JOHN GACHAGO
      21 LINDEN PARK DRIVE
      RANDOLPH, MA 02368

**PLAINTIFF'S ATTORNEY**

**DEFENDANT(S)/OTHER SINGLE PARTIES**

D01   BRISTOL MYERS SQUIBB
      C/O CT CORPORATION SYSTEM
      101 FEDERAL STREET
      BOSTON, MA 02110

D02   AMERICAN EXPRESS
D03   GC SERVICES LIMITED PARTNERSHIP

**DEFENDANT'S ATTORNEY**

| NO. | ENTRY DATE | DOCKET ENTRIES |
|---|---|---|
| 1 | 12/20/2004 | Complaint filed on 12/20/2004 at Quincy District Court. |
| 2 | 12/20/2004 | Filing fee of $180.00 and surcharge of $15.00 paid (G.L. c.262 §§ 2 & 4C). |
| 3 | 12/20/2004 | Statement of damages filed by P01 JOHN GACHAGO (Dist./Mun.Cts.Supp.R.Civ.P. 102A). |
| 4 | 12/20/2004 | DISMISSAL UNDER MASS.R.CIV.P. 4(j) potentially applicable on 04/29/2005 04:00 PM. |

| Page 1 of 1 | A TRUE COPY, ATTEST: | CLERK-MAGISTRATE/ASST. CLERK X  | DATE  |
|---|---|---|---|

Date/Time Printed: 02/18/2005 09:29 AM

```
                    COMMONWEALTH OF MASSACHUSETTS

NORFOLK COUNTY                          QUINCY DISTRICT COURT

                                        CIVIL COURT

JOHN GACHAGO,                       )   Case No: 04CV3682
                                    )
        Plaintiff,                  )   COMPLAINT FOR RELIEF
                                    )
    vs.                             )
                                    )
BRISTOL MYERS SQUIBB and            )
                                    )
AMERICAN EXPRESS                    )
                                    )
GC SERVICES LIMITED PARTNERSHIP

        Defendant(s)
```

1. The Plaintiff, JOHN GACHAGO is an individual currently residing in the state of Massachusetts with a usual place of domicile at 21 Lantern Lane Drive, Randolph, MA 02368 and formerly employed as a Territory Business Manager for Bristol Myers Squibb in the S E Massachusetts territory until May 3rd 2004.

2. The Defendants Bristol Myers Squibb (Tax ID#220790350) a corporation duly organized under the laws of the state of Delaware and American Express Company (Tax ID#134922250) organized under the laws of the state of New York and whose usual places of doing business respectively are 200 Vessey Street, New York, NY 10154 and 345 Park Ave, New York, NY 10154 and whose agent in common the state of Massachusetts is CT

COMPLAINT - 1

*A TRUE COPY ATTEST*
*ASST. CLERKS MAGISTRATE*

CORPORATION SYSTEM located at 101 FEDERAL STREET BOSTON MA 02110. The defendants will hereafter be referred to as BMS and AMEX respectively.

3. On April 27th 2004 the plaintiff filed a 4-week notice of resignation with his former employer Bristol Myers Squibb. Upon doing so he was asked by his manager at the time Joe Deluca to complete a final expense report and make arrangements to return all company material for a final close out by May 3rd 2004. Joe Deluca acting on behalf of Bristol Myers Squibb and his former manager of 3 months insisted that he close the plaintiff out on May 3rd 2004 well before the standard 2-week resignation typically permits. While standard close out procedures required Bristol Myers Squibb to collect all the company materials and company car from the resigning employees home, the plaintiff offered to leave his home in Massachusetts and deliver the company car and materials to Joe Deluca (Bristol Myers Squibb) at the Providence Marriott in Rhode Island for the final close out and completion of his responsibility to Bristol Myers Squibb. Joe Deluca as the manager for the Providence District and on behalf of Bristol Myers Squibb completed a checklist confirming that all company property had been returned and the plaintiff's services to Bristol Myers Squibb were complete making his resignation effective on May 3rd 2004.

4. On or around September 1st 2004 the plaintiff returned from a 3-week vacation to his current job only to find that there was a hold on his current American Express card provided by his current employer. The plaintiff also found a message on his answering machine from American

COMPLAINT - 2
A TRUE COPY ATTEST
ASST. CLERKS MAGISTRATE

Express calling about the balance on the plaintiffs BMS issued American Express corporate card.

5. The plaintiff then made multiple attempts to communicate with American Express on this matter explaining that this was not his personal account but rather Bristol Myers Squibb's corporate card and consequently there should be no hold on his current employer issued Amex corporate card if American Express had outstanding issues with the Bristol Myers Squibb issued American Express corporate card. After several exhaustive attempts and several days of being at a significant business disadvantage due to the hold on his currently issued AMEX corporate card he finally reached a Sandy at American Express in their collections department at telephone number 866 505 6811. Sandy on behalf of American express seemed to insist that this was the plaintiffs account and then proceeded further to explain something vague about the fact that it was a limited liability account and consequently was the plaintiffs responsibility. During this same conversation the plaintiff asked her to get in touch with Cathleen Everk who is the corporate card administrator who would in turn confirm this was a BMS account. She declined and insisted that this was the plaintiffs account even through it clearly read Bristol Myers Squibb and was paid for by Bristol Myers Squibb for the last 4 years. Sandy also said there was nothing she could do until BMS contacted Amex regarding this matter however she would not initiate the call. The plaintiff then decided the next best course of action was to

COMPLAENT - 3



1  communicate with the Bristol Myers Squibb corporate card administrator
2  Cathy Everk.

6. The plaintiff then communicated with Cathy Everk at Bristol Myers
   Squibb at telephone number 6094196584 and email cathy.everk@bms.com
   with a copy to Joe Deluca (BMS Providence Territory Manager) and Elaine
   Ferannaci (BMS Region Business Director) at the time. The plaintiff
   explained the situation asked that BMS communicate with American
   Express on this matter explaining that this was BMS account and not the
   plaintiff's account.

7. Between Aug 27th and September 10th several emails were exchanged with or
   copied to the plaintiff from BMS. On one of these emails dated
   September 3rd 2004 the plaintiff received communication from Cathy Everk
   at BMS that she had been in touch with Amex and let them know of the
   situation. In another of these emails Cathy Everk representing BMS as
   Corporate Card Administrator claimed that she could not have the
   charges paid without the managers (Joe Deluca) approval. In a separate
   email she copied the plaintiff on an email in which she clearly states
   that she could see that the plaintiffs final report was paid yet she
   further alledges there is a past due amount of $1149.27. In the same
   email dated Augst 27th she asks Joe Deluca if he wants the plaintiff to
   reconcile the $1149.27 and if so she can send him all his Amex
   statement. Shortly theraftre Cathy Everk (BMS) chose to mail the
   plaintiff statements that were 2 years old claiming the outstanding
   amount was the plaintiffs responsibility. In an attached note to the

COMPLAINT - 4

A TRUE COPY ATTEST
ASST. CLERKS MAGISTRATE

statement Cathy Everk(BMS) demanded rather ludicrously that the plaintiff reconcile these statements for the last 2 years and provide what she alleges were missing receipts.

8. The plaintiff then called American express to confirm communication form BMS to them regarding this matter. At this point Amex confirmed that Cathy Everk on behalf of BMS had called and confirmed that BMS was going to pay off this account and because of this Amex agreed to remove the hold on the plaintiffs' Amex card issued by his current employer. At that point the plaintiff was led to believe that Amex resolved the matter he would no longer have to be concerned about it.

9. On or around November 25, 2004 as the plaintiff was seeking to refinance his home and purchase a new home he became aware of a derogatory report on his credit history suggesting that he was indebted to American Express to the tune of $1219.00. For this specific reason the mortgage company denied him both the refinance and the new mortgage for the new home he and his family are relocating to. Other recent denials for credit as a result of this issue include that for office furniture and business equipment, not to mention the failure to obtain a lower interest rate.

10. The plaintiff then got in touch with the American Express Credit bureau unit in Ft Lauderdale, FL at 954 503 3787 or fax 954 503 7695 on 12/7/04 at 2.39 pm where he spoke with a Mrs Gordon. The latter confirmed that this outstanding amount of $1219 was still showing on the plaintiffs

COMPLAINT - 5

A TRUE COPY ATTEST

ASST. CLERKS MAGISTRATE

personal credit record as unpaid by him even though it clearly showed that it was a Bristol Myers Squibb Account. When the plaintiff asked how he could have this BMS account taken off their record as his personal account she suggested the plaintiff call BMS and ask that they call Amex. She also indicated that it was in collection by a company called GC Services. In her words if the plaintiff wanted any further detail on it such as the account number he would have to contact GC Services, which was the collection agency. Prior to this the plaintiff communicated in writing and via certified mail to GC Services asking they no longer call his home for a debt that they were fully aware was not the plaintiffs.

11. Due to this negligence and deceptive corporate irresponsibility on both the parts of BMS and AMEX the plaintiff has suffered as follows: His credit score and history has been substantially damaged resulting in denial of a mortgage to refinance his current home and the denial of a mortgage for the new home he and his family needed to begin construction on in December 2004 to occupy by June 2004. In addition due to this problem other credit providers have denied the plaintiff credit due to the mar on his credit report

12.     Wherefore the plaintiff demands that the court award judgment in the amount of $385,000 as commensurate with the lost ability to secure

A TRUE COPY ATTEST

ASST. CLERKS MAGISTRATE

1  a mortgage in the equivalent amount due to this erroneous report on the
2  plaintiffs credit history, instruct the defendants to immediately
3  withdraw in writing any and all derogatory credit as required by the
4  Fair Credit Reporting Act. Further the plaintiff demands that under the
5  authority of the court that the defendants write letters to every
6  creditor that has requested a copy of the plaintiffs credit history in
7  the preceding 12 months, cease and desist from having collections
8  agencies such as GC Services from harassing the plaintiff for this
9  alleged amount of $1200.

13. Wherefore the plaintiff also asks that the court compel BMS to ensure that all Bristol Myers Squibb Territory Business Managers are made aware that the American Express Corporate Card issued by the same is the responsibility of the company and hold them harmless for any charges incurred for business purposes. Similarly when Territory Business Managers such as the plaintiff do obtain the American Express Card to conduct business on behalf of the defendant (BMS) that the employee's personal social security number be exempted form the card application completion process and instead require that the company's tax identification number solely be provided.

14. Wherefore the plaintiff also asks the court to compel American Express to release all employees of any liability when conducting business on their employers' behalf on an Amex corporate credit card issued in the employers name.

COMPLAINT - 7

A TRUE COPY ATTEST
[signature]
CLERK MAGISTRATE

15. Wherefore the plaintiff charges that BMS deceptively compels its employees to accept the American Express Corporate card in such a manner that implies that it is a precondition for employment and further prevents employees from using the same for personal use but in fact hold the very same employees responsible for debt incurred on the company's behalf and while engaged in company business.

PLAINTIFF

By: <u>John Gachago (Pro se)</u>

21 Linden Park Drive,
Randolph, MA 02368

Dated this 17th day of December, 2004

Sent via certified mail return receipt to Bristol Myers Squibb and American Express at CT Corporation System 101 Federal Street, Boston, MA 02110.

A TRUE COPY ATTEST

ASST. CLERKS MAGISTRATE