UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOHN GACHAGO,<br>  Plaintiff<br><br>v.<br><br>BRISTOL MYERS SQUIBB, and<br>AMERICAN EXPRESS,<br>  Defendants | CIVIL ACTION NO.<br><br>05-10141-RGS |

### DEFENDANT AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

American Express Travel Related Services Company, Inc. ("American Express") hereby opposes plaintiff's motion for a preliminary injunction.

### Introduction

This dispute began as a simple disagreement between the plaintiff and his former employer about the reimbursement of $1083.50 in expenses that the plaintiff charged to a corporate credit card issued by American Express. When plaintiff's former employer refused to reimburse him, however, the plaintiff decided not to pay American Express. He then sued American Express, claiming hundreds of thousands of dollars in damages. He now asks for the extraordinary relief of a preliminary injunction precluding American Express from reporting his nonpayment to the credit bureaus. Plaintiff's request should be denied because his underlying claims are devoid of merit and his allegations of irreparable harm are unfounded.

### Statement of Facts

While employed by Bristol-Myers Squibb, plaintiff John Gachago requested and received a corporate credit card from American Express. Affidavit of Mark A. Campbell ("Campbell

Aff.) ¶ 3. He used the card to purchase goods and services. Campbell Aff. ¶ 5. In return for this privilege, he agreed to be personally responsible for all amounts that he charged to the card. *See* Campbell Aff. ¶ 6 and Corporate Cardmember Agreement attached thereto at Tab A. Each month, Mr. Gachago received monthly statements at his personal residence, listing recent transactions and a total amount due. Campbell Aff. ¶ 7. Mr. Gachago never questioned the accuracy of American Express's records and does not do so today. Campbell Aff. ¶ 7; Plaintiff's Complaint.

In May 2004, however, Mr. Gachago left his job with Bristol Myers Squibb, closed his account with American Express, and refused to pay the remaining amount due of $1083.50. Campbell Aff. ¶¶ 8-9. To date, American Express still has not been paid for the $1083.50 in goods and services Mr. Gachago purchased on credit using his corporate credit card. Campbell Aff. ¶ 9. With delinquency fees, the balance on Mr. Gachago's account is now $1219. Campbell Aff. ¶ 10. American Express has routinely reported the fact of nonpayment to credit bureaus. Campbell Aff. ¶ 11. Mr. Gachago's credit report, therefore, reflects an unpaid balance of $1219. Campbell Aff. ¶ 11.

In December 2004, Mr. Gachago sued American Express in state court, insisting that he does not have to pay American Express for the goods and services he purchased using his corporate credit card because those charges were incurred in the course of his employment with Bristol-Myers Squibb. Mr. Gachago seeks to recover hundreds of thousands of dollars in damages from American Express.

The defendants removed this suit to federal court and answered the Complaint, denying Mr. Gachago's claims to relief. Mr. Gachago has now moved for a preliminary injunction. That motion should be summarily denied.

## Discussion

In order to obtain a preliminary injunction, the burden is on the plaintiff to show "(1) the likelihood of success on the merits, (2) the potential for irreparable harm to the movant, (3) the balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted, and (4) the effect of the decision on the public interest." *Philip Morris, Inc.* v. *Harshbarger*, 159 F.3d 670, 673 (1st Cir.1998)

### I. Gachago's Request for a Preliminary Injunction Should Be Denied Because He Is Unlikely to Prevail on the Merits.

The most critical of the four preliminary-inquiry requirements is a demonstration that the moving party is reasonably likely to succeed on the merits of the claim on which that party bases its request for an injunction. *Philip Morris, Inc.*, 159 F.3d at 674 ("Likelihood of success is the touchstone of the preliminary injunction inquiry."); *Ross-Simons of Warwick, Inc.* v. *Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir.1996) (likelihood of success is the "main bearing wall of the four-factor framework"); *Weaver v. Henderson*, 984 F.2d 11, 12 (1st Cir. 1993) ("The sine qua non of the [preliminary-injunction inquiry] is whether the plaintiffs are likely to succeed on the merits.").

Mr. Gachago has not even attempted to meet his burden of proving that he is likely to prevail on the merits. He devotes no attention to the subject in his motion. And, more significantly, he has not articulated a single reason why he should be excused from paying his debt to American Express.

Indeed, Mr. Gachago is almost certain to lose on the merits. The contract that Mr. Gachago entered when he accepted, signed, and used the corporate card defines Mr. Gachago as the "Corporate Cardmember" and then plainly states:

> 5. Liability
>
> You as the Corporate Cardmember are responsible for all Charges billed to your account. . . .
>
> 6. Payments
>
> Payment for all Charges is due immediately upon receipt of the billing statement we mail to you.

See Corporate Cardmember Agreement attached to Campbell Affidavit at tab A. Mr. Gachago is bound by terms of the contract he signed. Those terms entitled American Express to collect from Mr. Gachago the unpaid balance on his account.

Mr. Gachago nonetheless insists that Bristol Myers Squibb is liable for the outstanding amounts because Mr. Gachago charged them to his corporate card while conducting business on his employers' behalf. That assertion is both contested by Bristol-Myers Squibb[1] and irrelevant. The fact that Bristol-Myers Squibb may be obligated to reimburse Mr. Gachago does not excuse Mr. Gachago from his obligation to pay American Express. Mr. Gachago's request for a preliminary injunction must be denied because he is unlikely to succeed on the merits. *See FIBA Leasing Company, Inc. v. Airdyne Indus. Inc.*, 826 F. Supp. 38, (D. Mass. 1993)

## II. Mr. Gachago Has Failed To Demonstrate That He Will Suffer Irreparable Harm If an Injunction Does Not Issue.

Mr. Gachago has also failed to demonstrate that he will suffer irreparable injury if an injunction is not granted. *See, e.g., Ross-Simons of Warwick, Inc. v. Baccarat*, 102 F.3d 12, 15 (1st Cir. 1996) (describing irreparable harm as "an essential prerequisite" in seeking injunctive relief) "The burden of demonstrating that a denial or interim relief is likely to cause irreparable harm rests squarely upon the movant." *Charlesbank Equity Fund II, Limited Partnership v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004). The plaintiff may not meet this burden

with mere "conjecture, surmise, or . . . unsubstantiated fears of what the future may have in store." *Id.* Moreover, the claimed injury must lack an adequate remedy at law. *See Interco, Inc. v. The First National Bank of Boston*, 560 F.2d 480, 485-86 (1st Cir. 1977). Where the claimed injury can be compensated by an award of pecuniary damages, the plaintiff's legal remedy is adequate and an injunction may not issue. *See Charlesbank Equity Fund II, Limited Partnership*, 370 F.3d at 162.

Mr. Gachago has not submitted a single affidavit to support the claim that he is about to lose business opportunities because his credit report accurately reflects an unpaid balance on a corporate credit card. He has not shown that the "Foreign Real Estate Development Investment" he cites is a realistic investment opportunity, that it has been rendered unobtainable by the outstanding American Express corporate card balance, or that it would have returned $378,000 in profits as he predicts. Nor has he shown that he can reasonably predict when this opportunity will disappear. Mr. Gachago has alleged that he was refused a mortgage by Champion Mortgage because of the outstanding corporate card balance, but that allegation is not supported by the unauthenticated letter from Champion Mortgage that he attaches to his brief. The lack of any evidentiary support for Mr. Gachago's allegations of imminent financial harm is alone sufficient reason to deny his motion for a preliminary injunction. *See Donnelly v. Boston College*, 401 F. Supp, 1, 3-4 (D. Mass. 1975) (refusing to grant preliminary injunction on ground that plaintiff failed to establish likelihood of success on the merits or probability of irreparable harm by his unsubstantiated allegations) (citing *Walker v. Providence Journal Co.*, 493 F.2d 82, 87 (1 Cir. 1974)).

---

[1] Mr. Gachago has not submitted any evidence by affidavit or otherwise to support the assertion that he is entitled to reimbursement from Bristol-Myers Squibb.

Mr. Gachago also has not shown that any of the damages he claims he will suffer cannot be compensated with monetary damages. To the contrary, Mr. Gachago complains entirely about economic harms, the measure of which he claims to be able to estimate in his brief. Each of these alleged items of damage could be compensated with pecuniary relief. None therefore constitute irreparable harm. *See Charlesbank Equity Fund II, Limited Partnership*, 370 F.3d at 162.

It is worth noting that Mr. Gachago has an obligation to take all reasonable steps to mitigate his own damages. *See Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575 (1982). To the extent that he continues to suffer losses because his credit report shows an unpaid balance of $1219, Mr. Gachago could easily avoid those losses by first paying the $1219 balance and then seeking reimbursement from Bristol-Myers Squibb.[2]

Finally, the Court should be skeptical of Mr. Gachago's claim of imminent irreparable harm because Mr. Gachago waited more than a month to file suit after discovering the disputed entry on his credit report and then neglected to seek an injunction for more than four months after filing his Complaint. Ordinarily, preliminary injunctions are granted on the theory that, because of an urgent need for speedy action to protect the plaintiff's rights, the Court must act in advance of a full hearing on the merits. *See* Wright, Miller & Kane, *Federal Practice and Procedure*, Civil, §2947 at 123. A self-created emergency – one which arises from plaintiff's own conduct or from circumstances under plaintiff's control – however, cannot serve as the basis for preliminary relief. *See Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980); *Fulani v. Hogsett*,

---

[2] In the highly unlikely event that Mr. Gachago did prevail on the merits, American Express would strenuously object to him recovering damages related to the "Foreign Real Estate Development Investment" he cites. American Express's decision to hold Mr. Gachago personally liable for a $1219 debt according to the terms of his contract cannot legally be characterized as the cause of Mr. Gachago's decision not to invest.

917 F.2d 1028, 1031 (7th Cir. 1990); Wright, Miller & Kane, *Federal Practice and Procedure*, Civil, § 2946, at 113 (1995) ("Equity aids the vigilant, not those who slumber on their rights."). By delaying, Mr. Gachago has undermined his own request for an expedited remedy, and made equitable relief particularly inappropriate. *See K-Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 911 (1st Cir. 1989) (laches may be found where unreasonable delay results in prejudice to the opposing party)

### III. The Remaining Factors of the Preliminary-Injunction Test Also Do Not Support the Issuance of a Preliminary Injunction.

Finally, the remaining two factors in the preliminary-injunction test – "the balance of the movant's hardship if relief is denied versus the nonmovant's hardship if relief is granted, and . . . the effect of the decision on the public interest" – do not support issuance of an injunction in this case. *Philip Morris, Inc.*, 159 F.3d at 673 (1st Cir.1998). As an isolated event, removing a record of plaintiff's unpaid balance from his credit report might not cause American Express much harm. Systematically awarding that relief to debtors based solely on the allegation that the derogatory remark will detrimentally affect the debtor's ability to secure new credit, however, would dramatically undermine the market for credit in this country. Credit grantors rely on the credit reporting system to assess the risks involved in extending credit to each new applicant. If applicants had the ability to erase any record of a past default from their credit file simply by bringing suit, requesting a preliminary injunction, and then applying for new credit while awaiting a trial on the merits (as Mr. Gachago seeks to do here), credit grantors would lose their ability to rely on the credit reporting system as a meaningful measure of the risk of new applications. The harm to the public interest of weakening the credit market in this manner would be substantial.

## Conclusion

For the reasons stated herein, this Court should deny the application for injunctive relief in its entirety.

>AMERICAN EXPRESS TRAVEL RELATED
>SERVICES COMPANY, INC.
>
>By its attorneys,
>
>
>_Paige Scott Reed_____
>Joseph S. Sano, BBO # 545706
>Paige A. Scott Reed, BBO #637905
>Prince, Lobel, Glovsky & Tye LLP
>585 Commercial Street
>Boston, MA 02109
>(617) 456-8000

Date: May 18, 2004