UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN GACHAGO, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>BRISTOL-MYERS SQUIBB, and )<br>AMERICAN EXPRESS, )<br>)<br>Defendants )<br>) | CIVIL ACTION NO.<br>05-10141-RGS |

### DEFENDANT BRISTOL-MYERS SQUIBB COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Bristol-Myers Squibb Company ("BMS" or the "Company") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss. As set forth below, the Amended Complaint fails to state a cause of action against Defendant Bristol-Myers Squibb Company under any of the several theories of liability advanced by Plaintiff John Gachago.

### INTRODUCTION

The essence of Plaintiff's claim is summarized in the final paragraph of his 111 paragraph Amended Complaint. Mr. Gachago "feels betrayed and falsely accused of wrong doing with no recourse but to either pay off a debt that is rightfully BMS' liability or to suffer a damaging credit report." In fact, as the undisputed facts set forth in the Amended Complaint demonstrate, Plaintiff's damages stem from his own refusal to pay the credit card debt that was admittedly his obligation under his contract with American Express. Rather than satisfy his legal obligation to American Express and resolve any



disputed charges with BMS by submitting the requisite paperwork, he chose instead to stand solely on his belief that the debt rightfully belonged to BMS. His adverse credit rating and consequential damages were the sole result of his choice to stand on principle instead of honoring his legal obligation to American Express.

## FACTS

In May of 2000, Plaintiff John Gachago began employment with BMS as a Territory Business Manager. See Am. Compl. ¶ 1. Approximately two years later, he obtained an American Express card for business purposes. See Am. Compl. ¶¶ 6-12. In advance of obtaining his card, he signed a routine "Agreement Between Corporate Cardmember and American Express Travel Related Services, Inc." (hereinafter referred to as the "Corporate Cardmember Agreement"), which is attached to the Amended Complaint as Exhibit 1. See id. ¶ 60. Under the agreement, as the Corporate Cardmember, he agreed to the following:

> You as the Corporate Cardmember are responsible for all Charges billed to your account. All business Charges are to be reported to the Company for expense report processing in accordance with the Company policy. All business Charges billed to the Corporate Card which are reimbursable by the Company will be paid by you or paid directly by the Company under the Company's expense procedures applicable to you. You, as the Corporate Cardmember, are accountable for any reimbursements and agree to remit such funds to us promptly.

Am. Compl. Ex. 1, ¶ 5. He also signed an "American Express Corporate Charge Card Program Agreement," (hereinafter referred to as the American Express Agreement"), attached to the Amended Complaint as Exhibit 2, where he further "agrees to be liable for payment of all charges on the Card in accordance with the terms of the Agreement." See id. ¶¶ 7, 60 & Ex. 2, ¶ (II)(d).

Mr. Gachago expressly agreed to use this card solely for business purposes. See id. ¶ 8 & Ex. 2, ¶II(c), Ex. 1, ¶ 2. However, he regularly used the card for personal, non-business expenses. See id. ¶¶ 10, 12, 13, 52, 62, 78, 80.

Consistent with his agreement to be personally responsible for all charges billed to his account, and to be accountable for remitting funds promptly to American Express, American Express sent the charge card bills directly to Mr. Gachago's home. See id. ¶ 80. He, in turn, prepared and submitted expense reports to BMS to obtain reimbursement for his business expenses. See id. ¶ 17. According to Mr. Gachago, BMS accepted all expense reports submitted by him. See id. ¶¶ 21, 82. He submitted payments for his personal, non-business expenses directly to American Express. See id. ¶ 10.

On April 27, 2004, Mr. Gachago resigned from BMS. See Am. Compl. ¶ 22. He submitted his last expense report to BMS on April 30, 2004, and the Company paid all of the expenses set forth in the report. See id. ¶ 23. As well, BMS paid him his outstanding salary, compensation, and performance bonus. See id. ¶¶ 23, 27, 28. Shortly thereafter, Plaintiff started working for Astra Zenca. See id. ¶ 26.

When he left the Company on May 3, 2004, Mr. Gachago had a substantial outstanding balance on his American Express card amounting to at least $1,595.47. See id., Ex. 3. Mr. Gachago ignored the outstanding balance on his card for approximately four months, despite receiving further written notice from American Express regarding the balance owed. See id. ¶¶ 29, 31. Instead, only after receiving a message on his answering machine from American Express seeking payment, Mr. Gachago contacted BMS on August 27, 2004, "in an attempt to get BMS to acknowledge liability." See id.

¶¶ 30, 31. A few days later, American Express put a hold on his American Express credit card that he had recently obtained in conjunction with his new employer. See id. ¶ 32.

On September 2, 2004, at Mr. Gachago's request, BMS sent him instructions on how to obtain reimbursement for any part of the outstanding balance that Mr. Gachago believed were business charges. See id. ¶ 33, Ex. 4. He agreed to submit the requested paperwork if the hold on his current card was eliminated. See id., Ex. 4. BMS immediately contacted American Express on his behalf and, as a result, the hold on his card was removed. See id. ¶34. Once the hold was removed, Mr. Gachago refused to submit the requested paperwork to BMS because he was "outraged" he was being held accountable for past expenses on his card. See id. ¶ 38. He subsequently filed suit against BMS. See id. ¶ 47.

## ARGUMENT

In considering a motion to dismiss, the court must accept all well-pleaded facts as true, and draw all reasonable inferences in favor of the plaintiff. See Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993). That said, when ruling on a motion to dismiss, the court "will not accept a complainant's unsupported conclusions or interpretations of law." Id. General allegations must "be supported by a specific factual basis." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir. 1990). "The pleadings are not sufficient where the plaintiff rests on 'subjective characterizations' or unsubstantiated conclusions." Id. (quoting Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982)). "[I]t is the plaintiff's burden to make sufficient factual allegations in order to survive a Rule 12(b)(6) motion." Day v. Fallon Community Health Plan, Inc., 917 F.Supp. 72, 75 (D. Mass. 1996). "The exhibits

attached to the complaint may be properly considered for Rule 12(b)(6) purposes." Deisenroth v. Numonics Corp., 997 F. Supp. 153, 154 (D. Mass. 1998).

### A. Plaintiff Has Failed To State A Claim For Breach of Contract

Plaintiff makes the claim that BMS breached two distinct contracts: the Corporate Cardmember Agreement, which is attached to the Amended Complaint as Exhibit 1, and an "implicit monthly expenses report payment procedures established as a course of business." See Am. Compl. ¶ 58. To prevail on a breach of contract claim, the plaintiff must prove the existence of a binding agreement, the defendant's breach thereof, and damages resulting from the breach. See Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 415 (D. Mass. 1995). The Plaintiff's failure to plead the elements of a breach of contract warrants dismissal of this count. See Gibbs v. SLM Corp., 336 F. Supp.2d 1, 16 (D. Mass. 2004) (contract claim dismissed where complaint was devoid of any details about the alleged breach).

As to the Corporate Cardmember Agreement, Plaintiff does not cite a specific provision setting forth the contractual obligation purportedly breached by BMS. Instead, Plaintiff only cites to the American Express Agreement and, specifically, to *his* agreement to be liable for all charges, and to permit BMS to withhold from his pay check, bonus or severance, any charges for personal or non-business purposes guaranteed or paid for by BMS. See Am. Compl. ¶¶ 56 & Ex. 2, ¶ II(d), see also id. ¶¶ 8, 39. The fact of the Company Credit Agreement alone does not sustain Plaintiff's claim. To state a breach of contract claim, plaintiff must describe with "substantial certainty" the specific obligations breached by BMS. See Williams v. Astra USA, Inc., 68 F.Supp.2d 29, 37 (D. Mass. 1999) (dismissing employee's contract claim against employer). Plaintiff's failure

5

to define the precise nature of the breach of the Company Credit Agreement warrants dismissal of this claim. See Gibbs, 336 F.Supp.2d at 16.

As to the so-called "implicit monthly expense report payment procedures" contract, Plaintiff does not state with "substantial certainty the facts showing the existence of the contract and the legal effect thereof." Doyle v. Hasbro, Inc., 103 F.3d 186, 194-95 (1st Cir. 1996) (complaint failed to sufficiently allege contract to support breach of contract claim) (citation omitted). The Amended Complaint does not set out the specific term or terms of this alleged contract or the obligations imposed on each of the parties.[1] See Am. Compl. ¶¶ 51-59. In addition, the precise nature of the breach remains undefined. The conclusory statement that BMS breached "the implicit monthly expenses report payment procedures established as a course of business," Am. Compl. ¶ 58, is insufficient to satisfy the pleading requirements. See Doyle, 103 F.3d at 194-95; Gibbs, 336 F.Supp.2d at 17-18.

  B.  **Plaintiff Has Failed To State A Claim For Violation of Implied Covenant of Good Faith and Fair Dealing**

Plaintiff's allegations that BMS was "uncooperative" after he resigned by failing to pay the outstanding balance on his card do not sustain a claim for breach of the implied covenant of good faith and fair dealing. See Am. Compl. ¶¶ 74, 75. The covenant

---

[1] Plaintiff does, however, repeatedly refer to an "Audit Procedure" which is set forth in a document entitled "TE – Travel Card Administration – External Procedure," attached to the Amended Complaint as Exhibit 4. See Am. Compl. ¶ 33, 36, 37, 38, 39, 53 & Ex. 4. To the extent it could be inferred that the Audit Procedure sets forth the obligations of the parties under this alleged implied contract, the facts set forth in the Amended Complaint do not substantiate a breach of the terms. The Audit Procedure provides that "[i]t is the *employee's* responsibility to audit their own reports and submit outstanding business charges" and sets forth the three circumstances for which BMS will conduct an audit – active employee's with credits, suspected abuse, or terminated employee's accounts See Am. Compl. Ex. 4 (emphasis added). There are no facts in the Amended Complaint to support the inference that any of these three circumstances existed, thereby triggering any obligations by BMS.

6

provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471-472 (1991). The implied covenant, however, may not be "invoked to create rights and duties not otherwise provided for in the existing contractual relationship." Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). "In order to demonstrate a claim for the breach of the covenant of good faith and fair dealing, the plaintiff must show that there existed an enforceable contract between the two parties." Christensen v. Kingston School Committee, 360 F.Supp.2d 212, 226 (D. Mass. 2005) (citation omitted).

The concept of good faith and fair dealing in any given context is shaped by the nature of the contractual relationship from which the implied covenant derives. See Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 385 (2005), *petition for cert. filed*, 73 U.S.L.W. 3720 (U.S. May 31, 2005) (No. 04-1634). In this case, Plaintiff's claim pertains loosely to his employment relationship with BMS, and primarily to the aftermath of that relationship when there was a dispute with the Company over an outstanding corporate credit card balance. In the context of an employment relationship, there are only a narrow category of cases where Massachusetts courts have recognized a claim for breach of an implied covenant of good faith and fair dealing, and this is not such a case.

A claim for breach of the covenant of good faith and fair dealing has only been recognized in employment cases under Massachusetts law where there was a bad faith termination of the employee. See Ayash, 443 Mass. at 385 ("employers (in varying contexts and subject to strict limitations) have been held liable for breach of the implied

7

covenant of good faith and fair dealing <u>only</u> in circumstances when an at-will employee has been terminated in bad faith.") (emphasis added). Given that Plaintiff voluntarily resigned from BMS, <u>see</u> Am. Compl. ¶ 22, he does not state a claim for breach of the implied covenant of good faith and fair dealing. <u>See also</u> Am. Compl. ¶¶ 27, 28, 57, 72, 79. <u>See</u> <u>Edsall v. Assumption College</u>, 367 F.Supp.2d 72, 79 (D. Mass. 2005) (dismissing claim for breach of covenant of good faith and fair dealing where plaintiff was not terminated from employer); <u>McCone v. New England Telephone & Telegraph Co.</u>, 393 Mass. 231, 234 (1984) (complaint alleging that employer breached implied covenant of good faith and fair dealing by requiring its employee evaluations to conform to statistically determined distribution curve stated no claim).

  C. <u>The Intentional Interference With A Contract Claim Should Be Dismissed</u>

  Count III of the Amended Complaint attempts to assert a claim for intentional interference with a contract. In order to state a claim for intentional interference with a contract, the plaintiff must allege that "(1) he had a contract with a third party; (2) the defendant knowingly interfered with that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." <u>Harrison v. NetCentric Corp.</u>, 433 Mass. 465, 476 (2001). Plaintiff's claim that BMS intentionally interfered with his contractual relationship with American Express fails for a number of reasons.

  As an initial matter, "intentional interference with a contractual relationship cannot be alleged against a party bound by the contract." <u>Bennett v. City of Holyoke</u>, 230 F.Supp.2d 207, 229 (D. Mass. 2002) (dismissing intentional interference claim against party to contract). Plaintiff states that BMS was a party to the same Corporate

8

Cardmember Agreement that he also alleges was tortuously interfered with by BMS. See Am. Compl. ¶¶ 51, 58, 80 & Ex. 1. By definition, therefore, intentional interference with a contract cannot be alleged against BMS in these circumstances. See Devlin v. WSI Corp., 833 F. Supp. 69, 78 (D. Mass. 1993).

Even assuming that BMS was not a party to the agreement, Plaintiff cannot sustain his claim as to liability. Mr. Gachago alleges that BMS induced American Express to "abandon their standard late fee procedure" and thereby "break" the agreements pertaining to his corporate credit card. See Am. Compl. ¶¶ 80, 82, 85 86 & Ex. 1. See Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994) (plaintiff must prove that defendant knowingly induced the third party to break the contract). However, there are no facts alleged in the Amended Complaint from which an inference can be drawn that BMS intentionally and improperly interfered with American Express's late fee procedure. See Am. Compl. ¶¶ 81, 82; American Private Line Servs., Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 37 (1st Cir. 1992) (no interference where defendant did not threaten anyone, misrepresent any facts, defame anyone or use any other improper means). As a result, Plaintiff's conclusion about BMS's purported unjustifiable interference with his agreement with American Express is not supported by the allegations in the Amended Complaint.

Finally, Plaintiff's alleged damages resulting from the adverse affect of the outstanding debt on his credit rating are not the result of any interference by BMS. See Am. Compl. ¶¶ 80, 86. "It is also of the essence in an action for wrongful interference with contractual relationships that the plaintiff suffer damages as a consequences of the defendant's conduct." See Chemawa Country Golf, Inc. v. Wnuk, 9 Mass. App. Ct. 506,

509, 510 (1980). Mr. Gachago admits that under the terms of the Corporate Card agreement he is "liable for payment of all charges." See Am. Compl. ¶¶ 6, 7 & Ex. 1, p. 2 at ¶ II(c). By seeking to collect any monies due from Plaintiff, American Express rightfully enforced Plaintiff's admitted liability, and did so independently under the terms of its express agreement with Mr. Gachago. Indeed, this Court has dismissed Plaintiff's corresponding breach of contract claim against American Express. As a result, Plaintiff cannot show that BMS's alleged interference was the cause of his damages.

    D.    The Claim Of Intentional Interference With An Employment Relationship Is Insufficient

The claim set forth in Count V for intentional interference with an employment relationship should also be rejected. The specific elements that Plaintiff must allege in order to state a claim of intentional interference with an employment relationship are: "(1) an advantageous employment relationship; (2) the defendant's knowledge of such relationship; (3) the defendant's interference, in additional to being intentional, was improper in motive or means; and (4) the plaintiff suffered economic harm as a result of the defendant's conduct." Ayash v. Dana-Farber Cancer Institute, 443 Mass. 367, 394-95 (2005). Plaintiff's claim fails to satisfy several of these requirements.

First, the Amended Complaint does not allege that BMS had knowledge of Plaintiff's employment with Astra Zeneca. See Am. Compl. ¶ 95. See Ryan, Elliott, & Co., Inc. v. Legat, McCall & Werner, Inc., 8 Mass. App. Ct. 686, 691-92 (1979) ("actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract"). Given that BMS's knowledge of the employment relationship is an essential element of this tort, and Plaintiff does not allege

10

such knowledge, he has failed to state a claim. See Gouin v. Gouin, 249 F.Supp.2d 62, 75 (D. Mass. 2003) (claim dismissed for failure to allege knowledge of the contract).

More importantly, there are absolutely no allegations that give rise to an inference of any intentional interference by BMS with the plaintiff's employment relationship with Astra Zeneca, let alone by any improper motive or means. See Am. Compl. ¶¶ 95-99. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817 (1990) (plaintiff failed to prove improper interference where defendant did not violate the law, use threats, misrepresent facts, defame anyone, or use any other improper means).

Further, it was American Express, not BMS, who put the hold on his Astra Zenica American Express credit card. As set forth above, American Express pursued Plaintiff personally for the outstanding debt on his BMS corporate card because Mr. Gachago agreed to be personally liable for the charges. See Am. Compl. ¶ 96. The hold on the credit card, therefore, was a direct result of Plaintiff's own agreement to be held personally liable, and not the result of BMS's actions. In addition to not being able for state a claim of causation of his damages, Plaintiff's claim fails because he does not set forth any pecuniary loss resulting from the hold on his Astra Zenica American Express credit card. See Am. Compl. ¶¶ 32, 34, 98, 100-111. See Shafir v. Steele, 431 Mass. 365, 369-70 (2000) (liability stems from pecuniary loss resulting from the intentional and improper interference). As a result, Plaintiff has failed to state a prima facie case for intentional interference with an employment relationship.

## CONCLUSION

For the foregoing reasons, Defendant Bristol-Myers Squibb Company respectfully requests that this Court grant its Motion to Dismiss the Amended Complaint.

Respectfully submitted,

BRISTOL-MYERS SQUIBB COMPANY
By its attorney,

*Eve Slattery /up*
Eve Slattery (BBO #634776)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 371-1000

Dated: July 25, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for the Plaintiff by first-class mail on July 25, 2005.

*Eve Slattery /up*
Eve Slattery