UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN GACHAGO,<br>    Plaintiff<br><br>v<br><br>BRISTOL MYERS SQUIBB,<br>    Defendant | )<br>)<br>)  CIVIL ACTION NO.<br>)<br>)  05-10141-RGS<br>)<br>)<br>)<br>) |

**AFFIDAVIT OF JOHN W. GACHAGO**

I, John W. Gachago, depose and state the following:

1) I was employed by Bristol-Meyers Squibb (hereinafter "BMS") from May 2000 until May 3, 2004 as a Territory Business Manager.

2) I was required to sign the American Express Corporate Charge Card Program Agreement. This agreement required that I process expense reports (hereinafter "E/R") in accordance with Company policy and that I authorize BMS to withhold monies from my pay check, bonus, and/or severance payment. See Exhibit 2

3) I was required to learn and follow the Policy and Guidelines similar to the 2005 version which stated that I must submit my E/R on a timely basis, that my immediate supervisor had to approve my E/R, and that Accounts Payable would audit my E/R at time of processing. See Exhibit 1.

4) As required by Company policy, I submitted all my expense reports ("E/R") on a timely basis (approximately once a month) for every month that I was employed by BMS. I reconciled all E/R electronically on the BMS provided laptop computer.

5) At the same time that I submitted my E/R to BMS, I paid AMEX directly for any and all non-business charges. The only charges submitted to BMS were for business purposes and after supervisor review and internal audit, BMS paid AMEX directly for those same submitted business charges.

6) On several occasions, BMS questioned the charges on my AMEX card, and except for excess cell phone usage amounts, all "disputed" charges were deemed "for business purposes" and paid for by BMS.

7) My performance evaluations, as an employee of BMS, included my ability to submit E/R in accordance with Company policy.

8) On at least two occasions, AMEX contacted me about an unpaid balance; on both occasions, the unpaid balance was due to a late payment by BMS. I do not recall one instance when an undue balance on my AMEX card was caused by a failure to reconcile my expense report.

9) To my recollection, there was a "previous" or unpaid balance on my monthly AMEX statement every month that I had the AMEX Corporate card. Since neither BMS nor AMEX had notified me of a problem, I believed that the $2,244.36 balance at the end of April 2004 was a reflection of BMS delayed payment system.

10)    I gave BMS four weeks notice, but rather than leaving on May 23, 2004, BMS terminated my services as of May 3, 2004 at which time I submitted my final E/R and returned all company property as required by the BMS "close out" procedures.

11)    My final E/R was paid in full.

12)    On or about June 1, 2004, I received my final bonus check from BMS paid in full; I believed that this payment signified that I had satisfied all my requirements with BMS and that I was leaving BMS on good terms.

13)    In late August early September 2004, I realized that AMEX was pursuing me for a past due balance that should have been paid by BMS and I made many attempts to clarify liability.

14)    On or about September 1, 2004, I realized for the first time that AMEX had put a hold on my AMEX card with my new employer, Astra Zeneca Corporation. On or about September 3, 2004, BMS contacted AMEX and had the hold taken off my Astra Zeneca Corporate card.

15)    On or about November 25, 2004, I attempted to refinance my home and discovered for the first time that the unpaid balance had been reported on my personal credit report; as a result of my lowered credit rating, I was not approved for the refinancing.

16)    As a result of the damage to my credit rating, I was unable to complete the planned "new construction" home purchase in Florida (and had to purchase a less desirable home at a higher interest rate) and I was unable to finalize my financial and legal obligations on a pending overseas real estate investment in Kenya and hence I lost the investment and am currently being sued.

SIGNED UNDER THE PENALTIES OF PERJURY THIS 6th DAY OF SEPTEMBER, 2005.

_____
John W. Gachago

STATE OF FLORIDA
COUNTY OF Alachua

The foregoing instrument was acknowledged before me this 6th day of Sept, 2005 by John W Gachago

Personally Known _____ or produced
Identification type Mass Drivers License

_____
Signature of Notary                    Seal

PETER MILLER
MY COMMISSION # DD 216341
EXPIRES: May 28, 2007
Bonded Thru Pichard Insurance Agency