# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN GACHAGO,<br>　　　Plaintiff<br><br>v.<br><br>BRISTOL MYERS SQUIBB,<br>　　　Defendant | CIVIL ACTION NO.<br><br>05-10141-RGS |

### PLAINTIFF JOHN GACHAGO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON COUNT I - BREACH OF CONTRACT

Plaintiff John Gachago respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment. As set forth below, there exists no genuine issue of any material fact and the Plaintiff is entitled to judgment as a matter of law.

### INTRODUCTION

Plaintiff had a contractual obligation to use his Corporate American Express (hereinafter "AMEX") card for "business purposes" only and to submit timely expense reports that itemized those charges. In return, Defendant had an obligation to audit those reports and either 1) to reject the charges as for "non-business purposes" and either discipline Gachago or to withhold the amount of the unauthorized charges from his paycheck or 2) to accept the charges as for "business purposes" and pay American Express directly.

Plaintiff used the AMEX card for "business purposes" only and he submitted all expense reports as required by Company policy. However in breach of the contract, BMS neither 1) rejected any charges as for "non-business purposes," nor 2) paid AMEX

for the charges made for and submitted as for "business purposes." As a consequence, Plaintiff suffered financial harm due to BMS' breach of contract.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, Summary Judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. Morrissey v. Boston Five Cents Say. Bank, 54 F.3d 27(1st Cir. 1995) "It [Summary Judgment] creates an excellent device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved." Community Nat. Bank v. Dawes 369 Mass. 550, 553, 340 N.E.2d 877 (Mass 1976) Citing 3 W. W. Barron & A. Holtzoff, Federal Practice & Procedure (Rules Edition) s 1231, at 96 (Wright rev.ed.1958) and C. A. Wright & A. R. Miller, Federal Practice & Procedure s 2712, at 370 (1973).

Summary judgment may be appropriate in a contract case; when the issue is covered in the contract, and no genuine issue of material fact remains to be decided, the motion may be determined as matter of law. Masarjian v. Mark Lighting Fixtures Co., 595 F.Supp. 869 (D.C.Conn.1984)

"Like other questions of fact, however, there is sometimes no genuine issue as to whether the parties' conduct implied a 'contractual understanding.' The words and actions that allegedly formed a contract may be so clear themselves that reasonable people could not differ over their meaning." FDIC v. Singh, 977 F.2d 18, 21 (1st Cir.1992)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Mr. John Gachago was an at-will employee of BMS for four years. Am. Comp. ¶1; Aff. ¶1

2. To maintain his employment, Gachago had to follow the rules and procedures imposed on him by his employer, BMS.¶¶ 3-6, 9-12. 17, 53-54; Exhibit 5 see "Written Warning."

3. Gachago was required to obtain an AMEX Corporate Card. See Exhibit 1 page 2: "The BMS Corporate charge card (where applicable) must be used to pay for all business expenses, except in cases where the card is not accepted."

4. In order to obtain the Corporate card, Gachago had to sign express contracts, had to follow all company policy governing its use, and had to agree that BMS could withhold funds from his pay check. Aff. 2; Am.Comp ¶¶ 6-8, 11, 12, 51, 61-63; Exhibits 1 and 2

5. The specific Company policies governing the use of the AMEX Corporate card is the <u>Business Travel, Entertainment & Meetings POLICY AND GUIDELINES</u> (hereinafter "Policy Guidelines" or Exhibit 1[1]). The terms of submission, the approval process, and payment procedures are unambiguous as illustrated in the section titled "business expense reporting" which states: "All business expenses should be reported by using the Company electronic reporting system (Express T&E). Reimbursement is completed via electronic funds transfer to American Express and to the employee's bank account (when applicable) within three

---

[1] The "Business Travel, Entertainment & Meetings POLICY and GUIDELINES" provided to the Plaintiff is dated January, 2005 and although these policies are dated after Gachago's employment, Defendant has assured Plaintiff that the policies in effect during Gachago's employment were essential the same. Plaintiff does not contest the accuracy of these guidelines as "governing" for this Motion for Summary Judgment.

business days of sending the completed approved report." Furthermore, "in all cases filing must occur within 30 days." See Exhibit 1 page 17 and Am.Comp. ¶ 17

6. Similarly, the approval process was methodical and unambiguous: "an employee's immediate supervisor (with Grant of Authority) must approve their expense report." (Exhibit 1 at page 17) "The person approving the expense report is responsible for reviewing business purpose, reasonableness of expense and compliance with policy. By approving an expense report, the supervisor confirms that the following actions have been performed:

· Expenses incurred were for legitimate business purposes only.

· American Expenses corporate card was used for business purposes only.

·Expense report has been submitted within 30 days from travel date." Id.

7. The Policy Guidelines go on to explain the "Review and Audit" procedures: "Management in each division is responsible for reviewing expense reports to ensure compliance with Company policy." "Misappropriation of Company funds through abuse of this policy . . . will lead to appropriate disciplinary action, up to and including termination." "Expense reports are audited at the time of processing by Accounts Payable. In addition, all expense reports are subject at any time to further review and audit by the Controller's Department, Internal Audit.... In cases where noncompliance is observed, ...the employee claiming reimbursement will be asked to document explanations for noncompliance with Company policy." Id. page 18; Aff. ¶ 3

8. Plaintiff submitted all expense reports. Aff.¶4; Exhibit 3

9. Plaintiff paid AMEX directly for all "non-business" charges. Aff. ¶5 Am Comp. ¶¶9, 10,

10. BMS paid AMEX directly for all charges made for "business purposes." Aff. ¶ 5 Am Comp ¶12, 13, 19

11. In accordance with Company Guidelines, charges on Gachago's expense reports were audited by BMS. Aff. ¶ 6; Am. Comp ¶21; Exhibits 5, 6, and 7

12. Gachago's performance was evaluated by his ability to follow expense reporting procedures. Aff. ¶ 7; Exhibits 5, 9, and 10

13. On February 27, 2004, two months prior to giving notice to BMS, Gachago was commended on developing an expense report system for his team. Aff. ¶ 7, Exhibit 10

14. There was a "balance forward" on the AMEX card statement every month of Gachago's employment with BMS including his last statement in April 2004. Aff. ¶¶ 8, 9; Am Comp ¶¶18, 19, 20

15. Gachago completed all of BMS' "close-out" procedures including the submission of his final expense report and the return of all Company property. Aff. ¶ 10; Am Comp ¶¶ 22, 24

16. Plaintiff's final expense report, pay check and bonus checks were paid in full. Aff. ¶¶ 11, 12; Am Comp ¶¶ 23, 27, 28

17. At time of termination, Defendant neither notified Plaintiff regarding any missing expense reports or charges submitted for "non-business purposes," nor did BMS withdraw any "past due" amounts from Gachago's final paycheck. Aff ¶ 10 - 12, Am Comp ¶¶ 22- 25, 27, 28, 39, 40, 56, 57

18. BMS did not pay AMEX the $1,115.90 remaining on the Corporate card. Am. Comp. ¶29

19. Plaintiff suffered financial damages as a result of the nonpayment by BMS and the subsequent and foreseeable reporting of this delinquency on his personal credit rating. Aff. ¶¶ 13 – 16, Am Comp. ¶¶ 100-109

## ARGUMENT AND SUPPORTING AUTHORITIES

## PARTIAL SUMMARY JUDGMENT – BREACH OF CONTRACT

It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement. Situation Management Systems, Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000); See also, McCarthy v. Tobin, 429 Mass. 84, 87 (1999). The breadth of documentation (Exhibits 1-10) illustrate that both BMS and Gachago had a "present intention" to be bound by Company policy which embodied the contract between the parties. Consequently, an enforceable contract existed between BMS and Plaintiff regarding the AMEX card from the first day Gachago acquired the AMEX card, through the monthly submission and audit of the expense reports, and up to the day Gachago received his final paycheck.

In Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F.Supp.404, 415 (D.Mass. 1995), the court outlined the essential elements of a contract claim: "(1) an agreement, express or implied, in writing or oral, (2) for a valid consideration, (3) performance or its equivalent by the plaintiff and breach by the defendant, and (4) damage to the plaintiff."

(1) As documented, Gachago and BMS did have "an agreement, express or implied, in writing." Plaintiff was required to submit monthly expense reports for charges made for "business purposes" which were reviewed by Gachago's immediate supervisor and subject to further review by the Controller's Department. (See Exhibits 1-3)

If there was any question about an expense report, BMS promptly contacted Gachago and either reprimanded him or commended him for the appropriateness of his submitted charges. (See Exhibits 4-10) BMS may claim that there was no express provision requiring BMS to notify Gachago of an "unpaid" balance, but the factual history demonstrates a commitment to timely and accurate expense reporting.[2] See South Buffalo Ry. Co. v. Ahern 344 U.S. 367, 73 S.Ct. 340 1953 (appellant's course of conduct over the years estopped it from now asserting a flaw in the bargain).

To ensure adherence to Company policy, BMS not only had audit and disciplinary procedures in place, but the Defendant also had, as a default position, the authority to collect any disputed charges from Gachago's (final) pay check. The contractual provision says that BMS "may" withhold monies from final pay and this can only be understood as a fallback position to guarantee payment from an employee unwilling to repay a disputed amount (such as an ex-employee). See J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795, 494 N.E.2d 374 (1986) (contracts must be construed to give reasonable effect to each provision).

---

[2] An express contract is a contract whose terms are stated by the parties; an implied contract is a contract whose terms are not so stated. The legal effect of the two types of contracts is exactly identical; the distinction is simply based on the way in which mutual assent is manifested. Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 1:5, at 20 (4th ed.1990) ; See also South Buffalo Ry. Co. v. Ahern, 344 U.S. 367, 73 S. Ct. 340, 97 L. Ed. 395 (1953) ("An agreement of conduct does not differ from an express agreement, except in the manner of which its existence is established").

As a fall back rule, Massachusetts law construes ambiguous contractual language against the drafter. See LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp, 739 F.2d 4, 7 (1st Cir.1984); Chelsea Indus. v. Accuray Leasing Corp., 699 F.2d 58, 61 (1st Cir.1983). Indeed, the drafter of an ambiguous term is generally held to any reasonable interpretation attributed to it by the nondrafting party. See Merrimack Valley Nat'l Bank v. Baird, 372 Mass. 721, 724, 363 N.E.2d 688 (1977)

(2) As valid consideration, it served the financial interests of both parties to have the convenience of an AMEX charge card with governing Corporate Guidelines in place to promote business, monitor for "business" expenses, and to maintain continued employment and performance bonuses.

(3) Plaintiff performed all of his obligations under the contract.

Gachago used his AMEX card for "business purposes" only and he submitted all expense reports in accordance with Company policy i.e., the terms of the contract. Upon termination, he abided by the "close out" procedures and allowed BMS almost four weeks (to review his account) before accepting his final paycheck, paid in full.

Even if the Defendant attempts to cloud the issue by citing factual questions about the date of submission, un-reconciled expense reports, or even specific charges for "non-business" purposes, these accusations are not material to the determination of breach of contract as a matter of law. A claim of ambiguity will not avail the party opposing summary judgment "... if the documents do not reflect ambiguity on the point in question, and the party resisting summary judgment adduces no evidence of ambiguity." US Trust v. Henley & Warren Mgt., Inc., 40 Mass. App. Ct. 337, 343 (1996). "Even if the language of a purported contract is ambiguous, summary judgment is appropriate when

the extrinsic evidence about the parties' meaning is 'so one-sided that no reasonable person could decide the contrary.'" Allen v. Adage, Inc., 967 F.2d 695, 698 (1st Cir.1992) (quoting Boston Five Cents Sav. Bank, 768 F.2d 5 at 8).

In the alternative, Plaintiff performed the equivalent of performance. Gachago (believed that he) submitted all his expense reports in accordance with Company policy and BMS failed to notify him otherwise. Once Gachago submitted his expense report, BMS had the sole decision making authority to determine if a charge was for "business purposes" and to pay the bill. By not following their own established procedures, BMS, through their own negligence, became liable for the charges. See Federal Insurance Company, et al., v. Banco Popular De Puerto Rico et al. 750 F.2d. 1095 (1983) (evidence of numerous faults with employer's internal control system supported finding that employer was negligent.) Distinquished but not over-ruled by Federal Insurance Company, et al., v. Banco Popular De Puerto Rico et al. 582 F. Supp. 1388, 1394 (1984) finding support for negligence claim not pleaded in Sun 'n Sand v. United California Bank, 148 Cal.Rptr. 329, 582 P.2d 920 (1978) (the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk)

(3) The defendant breached the contract by not paying AMEX. BMS could have either disciplined Gachago for not submitting an expense report or for making charges for "non-business" purposes or BMS could have withheld the amount due from Gachago's final pay, but BMS did not exercise either of its contractual options during employment or at the time of termination and, as such, they were obligated to pay AMEX.

Over the course of his employment, Gachago understood that he had to submit accurate expense reports or he would be questioned and possibly disciplined. In this

regard the summary in Exhibit 4 illustrates the constant dialogue between Gachago and BMS and if there had been a problem, it would not have gone uncorrected. It is not possible that any unpaid balance could have remained for more than a month or two.[3]

Over the course of his employment, Gachago's expense reporting improved[4] and on February 27, 2004, Plaintiff was commended for his work developing a team expense reporting system. Two months later, on May 3, 2004, when Gachago underwent the exhaustive "close-out" procedure, there were no deficiencies noted. It was not until August 2004 or three months after leaving the employ of BMS that Plaintiff was notified by AMEX that there was an overdue balance. (See Aff. ¶ 12) It was Gachago who contacted BMS about this unpaid balance and to this day, BMS has failed to disclose any specific details about the alleged "non-business" or un-reconciled charges. Am. Comp. ¶¶ 37, 38.

As stated by Gachago in his September email to BMS, "when I left BMS I felt I did so with a very clean slate, including a final expense report…In my mind this [discrepancy] ought to have been evident prior to my resignation from BMS." (See Exhibit 11) "So long as the promise is definite and certain so that the promisor should reasonably foresee that it will induce reliance, and reliance occurs, a party can maintain an action for breach."(Citations omitted) Guckenberger v. Boston University, 974 F.Supp.106, 150 (D. Mass 1997)

---

[3] On August 25, 2003, Colleen Davis wrote: "John has had a history of his AMEX being cancelled almost since he became an employee, as Cathy can attest to. His card would not have been shut off for one late payment under normal circumstances, but due to his past tardiness, American Express does shut his card down sooner than other reps." See Exhibit 6 page 3 Also see Exhibit 1 page 17 "Frequency," notations in Exhibits 5-9 requiring "timely submissions," and Exhibit 2 sections 6 and 7 "payment" and "late fees."

[4] Gachago's last questioned submission was 8/29/04 and the last reminder of timely submission was 12/02/03; five months prior to his termination.

(4) By not paying the AMEX bill, BMS could reasonably foresee that the Plaintiff would suffer economic harm. First a "hold" was placed on the Corporate card of Gachago's subsequent employer, then BMS had that hold removed and the "unpaid" charges were surreptitiously placed on his personal credit rating which resulted in the loss opportunity to refinance his home and to proceed with a new construction home purchase and to finalize an overseas real estate investment. Aff.¶¶ 13 – 16; Am.Comp ¶¶ 42-45 As a consequence of his poor credit rating, Plaintiff had to purchase an older home at much higher interest rates. Am.Comp ¶ 46; Aff. ¶ 16

## CONCLUSION

Summary judgment may be appropriate in a contract case; when the issue is covered in the contract, and no genuine issue of material fact remains to be decided, the motion may be determined as matter of law. <u>Masarjian v. Mark Lighting Fixtures Co.</u>, 595 F.Supp. 869 (D.C.Conn.1984); <u>Cleveland-Cliffs Iron Co. v. Chicago & N.W. Transp. Co.</u>, 581 F.Supp. 1144 (D.C.Mich.1984)

On point, the Court can find, as matter of law, that there was a contract between BMS and Gachago and that the issue of paying AMEX was specifically covered in that contract. Simply stated, the contract required that once Gachago submitted his expense reports according to Company policy, BMS would then audit these reports on a timely basis and pay AMEX for all charges made for "business purposes."

There are no material facts in dispute, Gachago performed his obligations under the terms of the contract and BMS breached the agreement by not refuting the charges as for "non-business" and then by not paying AMEX for these same "business" charges.

Accordingly, Plaintiff is entitled to Summary Judgment as a matter of law. Plaintiff asks the Court to award $94,455.20 in actual damages plus interest as well as reasonable and necessary attorney fees.

Respectfully submitted,
JOHN W. GACHAGO
By his attorney,

_____
Doug Surprenant BBO No. 651975
Law Office of Doug Surprenant
55 N. Franklin Street
Holbrook, MA 02343
(781) 767-9300

Dated: September 8, 2005