UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN GACHAGO, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. |
| ) | 05-10141-RGS |
| BRISTOL-MYERS SQUIBB, ) | |
| ) | |
| Defendant ) | |

DEFENDANT BRISTOL-MYERS SQUIBB COMPANY'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT 1 -- BREACH
OF CONTRACT

Defendant Bristol-Myers Squibb Company ("BMS" or the "Company") hereby submits the following Opposition to Plaintiff John Gachago's Motion for Summary Judgment on Count 1 (Breach of Contract). For the reasons set forth below, Plaintiff's motion should be denied.

BACKGROUND

While employed at BMS as a Territory Business Manager, Plaintiff requested and received a corporate charge card from American Express Travel Related Services Company, Inc. ("American Express") (hereinafter referred to as "Charge Card"). See Affidavit of Cathleen Everk ("Everk Aff.") ¶ 2. On July 8, 2002, Mr. Gachago signed an American Express Corporate Charge Card Program Agreement ("Charge Card Program Agreement"). Pursuant to the Charge Card Program Agreement, Mr. Gachago agreed to be bound by the terms and conditions of the "Agreement Between Corporate Cardmember and American Express Travel related Services Company, Inc."

("Cardmember Agreement").  (The Charge Card Program Agreement and the Cardmember Agreement are attached to the Affidavit of John Gachago ("Gachago Aff.") at Ex. 2.)  See Gachago Aff. ¶ 2, Ex. 2 (Charge Card Program Agreement at ¶ I(c)).

Mr. Gachago does not dispute that pursuant to the Charge Card Program Agreement and the Cardmember Agreement, he was liable for payment of charges to his Charge Card.  See Amended Complaint ¶¶ 7, 12; Gachago Aff. ¶ 2.  Specifically, Plaintiff agreed "to be liable for payment of all charges to the card in accordance with the terms of the [Cardmember] Agreement."  See Gachago Aff. ¶ 2, Ex. 2 (Charge Card Program Agreement at ¶ II (d)).  The terms and conditions of the Cardmember Agreement regarding liability, which Plaintiff specifically agreed to be bound by, provide as follows:

> <u>You[1] as the Corporate Cardmember are responsible for all Charges billed to your account.  All business Charges are to be reported to the Company for expense report processing in accordance with Company policy.</u>  All business Charges billed to the Corporate Card which are reimbursable by the Company will be paid by you or paid directly by the Company under the Company's expense procedures applicable to you.  You, as the Corporate Cardmember, are accountable for any reimbursements and agree to remit such funds to us promptly.  This Agreement has no effect on such procedures or your right to reimbursement or payment by the Company.  To the extent that you, as Corporate Cardmember, fail to honor any of the obligations under this Agreement, we reserve the right to collect the amount of such Charges directly from you.

See Gachago Aff. ¶ 2, Ex. 2 (Cardmember Agreement at ¶ 5)(emphasis added).

The Charge Card issued to Mr. Gachago was for business expenses only.  Personal use was not permitted on his Charge Card.  See Everk Aff. ¶ 4, Tab A at p. 5; Gachago Aff. ¶2, Ex. 2 (Cardmember Agreement at ¶ 2) & (Charge Card Program

---

[1] "You" is defined as the person named on the Corporate Card.  See Gachago Aff. ¶ 2, Ex. 2 (Cardmember Agreement at ¶ 1).

2

Agreement at ¶ II(b) & (c)). Nonetheless, Plaintiff routinely used his card for personal, non-business expenses. See Amended Complaint at ¶¶ 10, 13, 52, 62, 80; Gachago Aff. ¶¶ 5, 6.

According to the Company's "Travel and Expense Policy and Guidelines" ("Expense Policy and Guidelines"), which Plaintiff readily acknowledges were applicable to him, it was his sole responsibility to make sure that all charges made to his Charge Card were accounted for on his Travel & Expense ("T & E") Reports. See Gachago Aff. ¶ 3, Tab 1; Everk Aff. ¶ 3. The Expense Policy and Guidelines clearly state that those charges not accounted for on his T & E Reports were the responsibility of Plaintiff for payment to American Express. See Everk Aff. ¶ 5, Tab A at p. 5. Likewise, the provision in the Cardmember Agreement regarding liability expressly states that "[a]ll business charges are to be reported to the Company for expense report processing in accordance with Company policy." See Gachago Aff., Ex. 2 (Cardmember Agreement at ¶ 5).

From August 2002, when Plaintiff received his first Charge Card statement, to May 2004, when his card was cancelled, Mr. Gachago had numerous charges on his Charge Card statements that he never submitted on a T & E Report for reimbursement, *i.e.* never "reported to the Company for expense report processing in accordance with Company policy." These charges amounted to a total of $1,372.50. Because these charges were not accounted for on his T & E Reports or reported to the Company for expense report processing, according to the Expense Policy and Guidelines, Plaintiff was responsible for payment of these charges directly to American Express. See Everk Aff. ¶¶ 5, 11, Tab A at p. 5; Gachago Aff. Ex. 2 (Cardmember Agreement at ¶ 5).

3

The Expense Policy and Guidelines also provide that Mr. Gachago was responsible for keeping his Charge Card account current. Any late fees or finance charges (also known as "delinquency charges") assessed to his account were not reimbursable by BMS to Plaintiff. As a result, pursuant to the Expense Policy and Guidelines that Plaintiff acknowledged applied to him, he was responsible for payment of these delinquency fees directly to American Express. See Everk Aff. ¶ 6, Tab A at p. 5; Gachago Aff. ¶ 3. From August 2002 to May 2004, Mr. Gachago had a total of $207.71 of delinquency charges on his Charge Card statements, which he was responsible for payment directly to American Express.[2] See Everk Aff. ¶¶ 6, 12, Tab A at p. 5.

Mr. Gachago admits he was responsible for payment of any charges that were non-reimbursable expenses under the Company's guidelines. See Gachago Aff. ¶ 5; Everk Aff. ¶ 7. From August 2002 to May 2004, Mr. Gachago had a total of $1,565.83 of card charges that were submitted on a T & E Report but were deemed to be non-reimbursable expenses, or were only partially expensed on a T & E Report. Plaintiff was likewise responsible for payment of these charges directly to American Express. See Everk Aff. ¶¶ 7, 13.

As a result of his failure to submit card charges on his T & E reports for reimbursement, as well as the accrual of numerous delinquency charges, and charges that were submitted on a T & E Report but rejected for reimbursement because they were deemed to be non-reimbursable expenses, Plaintiff was responsible for payment in the amount of $3,146.04 directly to American Express. See Everk Aff. ¶¶ 5, 6, 7, 11, 12, 13.

---

[2] Indeed, in Plaintiff's Memorandum of Law, he acknowledged that he had a history of tardiness with regard to his Charge Card payments. See Plaintiff's Memo. of Law at p. 10, n.3. It should also be noted that these delinquency charges directly contradict Plaintiff's allegation that he was "never assessed late charges." See Amended Complaint at ¶ 73.

4

While Plaintiff did pay the amount of $1,655.23 directly to American Express to offset these charges, he failed to pay the entire amount of $3,146.04 for which he was liable. As a result, under the clear provisions of the Charge Card Program Agreement, Cardmember Agreement, and Company Expense Policy and Guidelines, Mr. Gachago was directly liable to American Express for the resulting outstanding balance on his Charge Card.[3]

At the time Plaintiff left the Company, it was patently obvious that the amounts on his final expense report would not extinguish the balance due on his Charge Card. See Everk Aff. ¶¶ 2, 8, 9, Tab B; Amended Complaint Ex. 3. Instead of following the Company policy and guidelines, which provide that it is the employee's responsibility to audit their own T & E Reports and American Express statements and submit outstanding business charges to the Company for reimbursement, Plaintiff chose to forego this procedure and ignore the balance on his Charge Card.[4] See Everk Aff. ¶ 17, Tab J. After he left BMS, Mr. Gachago continued to receive monthly notices from American Express regarding the outstanding balance, and he continued to do nothing until September of 2004, when he contacted BMS. See Everk Aff. ¶¶ 2, 9. In response, the Company's Travel Card Administrator provided Mr. Gachago with the appropriate paperwork to

---

[3] After his final expense report was paid in full, the balance on Mr. Gachago's Charge Card amounted to $1,083.50. See Everk Aff. ¶ 8. Plaintiff was ultimately liable to American Express for $1083.50, as opposed to $3,146.04 less $1,6,55.23, or $1,490.81, because BMS inadvertently paid a total of $407.31 to American Express as the result of reimbursing Plaintiff for out of pocket expenses by sending that payment to American Express instead of to Plaintiff directly ($320.70), and because the Plaintiff inadvertently got credit for a credit that was due BMS, or submitted some charges more than once on a T & E Report or on more than one T & E Report for which his card was reimbursed ($86.61). See Everk Aff. at ¶ 14, 15, 16.

[4] In addition, pursuant to the Company's policy on cancellation of corporate charge cards, should an employee leave the Company without reconciling their charge card account, the employee is responsible for payment of any charges that have not been accounted for in accordance with the Company's expense reporting procedure. See Everk Aff. ¶ 18, Tab K.

5

submit an expense report for the balance due on his Charge Card. Again, Plaintiff chose to forego the remedy for getting his outstanding balance paid by the Company, and, despite his clearly acknowledge personal liability, refused to pay American Express himself.[5]

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, Defendant BMS disputes the following facts set forth in Plaintiff's Statement of Undisputed Material Facts ("Plaintiff's Statement"). Given that fact discovery is currently ongoing in this case, Defendant reserves the right to supplement its response to Plaintiff's Statement.

In paragraph four of Plaintiff's Statement, he states that he agreed that BMS could withhold funds from his paycheck for payment of his Credit Card charges. See Plaintiff's Memo. of Law at p. 3. Plaintiff omits the full context of his agreement regarding the withholding of funds, which in its entirety provides:

> To the extent that the Company guarantees or pays any charges on behalf of the individual Applicant, and such charges are found to have been incurred for personal/non-business purposes, the individual Applicant will be liable to Company for payment of all such personal, non-business charges, and will pay Company immediately the amount of such charges. Should applicant not pay Company, applicant agrees that Bristol-Myers Squibb Company may withhold an amount equal to such charges from applicant's pay check, bonus, and/or severance payment.

Gachago Aff., Ex. 2 (Charge Card Program Agreement at ¶ II(d). Pursuant to the foregoing, Plaintiff only agreed that BMS could withhold money from his pay

---

[5] BMS has recently paid in full the balance on Mr. Gachago's Charge Card under a reservation of rights. See Affidavit of Eve Slattery, Esq. ("Slattery Aff.").

6

check or bonus if BMS <u>paid or guaranteed</u> charges that were found to have been incurred by Plaintiff for personal/non-business purposes. There is no evidence set forth by Plaintiff that the Company paid or guaranteed such charges to warrant a withholding. Moreover, Plaintiff cites no provision in the Expense Policy and Guidelines which provides that the Company will withhold funds from an employee's pay check or bonus in order to pay an American Express statement. To the contrary, the Expense Policy and Guidelines make it clear that it will not pay the amount of an employee's American Express statement, but rather will pay an American Express account based on an employee filing a T & E Report. <u>See</u> Everk Aff. ¶ 3, Tab A at p. 5.

In paragraph five of Plaintiff's Statement, he refers only to the Expense Policy and Guidelines entitled "Business Expense Reporting" as being the applicable policy. <u>See</u> Plaintiff's Memo. of Law at p. 3-4. He omits the Expense Policy and Guidelines entitled "Payment Methods – Corporate Charge Card" which provide:

> Corporate charge chards are maintained on an individual liability basis and are to be used for business expenses ONLY. Personal use is not permitted on the corporate charge cards.
>
> It is the sole responsibility of the employee to make sure all charges made to the corporate charge are accounted for on their T & E expense submission. Those charges not accounted for are the responsibility of the employee for payment to American Express.
>
> Employees are responsible for keeping their account 'current'; late fees/finance charges are not reimbursable. Late fees and finance charges are accessed to the account after 60 days of non-payment. These fees are not reimbursable. The employee is responsible for payment of these fees directly to American Express.
>
> . . .

> Bristol-Myers Squibb will pay your American Express Account based on your filing a T & E. The company does not pay the amount of your American Express statement.

See Everk Aff. ¶ 3, Tab A at p. 5. In addition, Plaintiff omits the Company policy entitled "Auditing of Expense Reports and Card Accounts," which provides that it is the employee's responsibility to audit their own T & E Reports and American Express statements and submit outstanding business charges to the Company for reimbursement. See Everk Aff. ¶ 17, Tab J.

In paragraph eight of Plaintiff's Statement, he states that he "submitted all expense reports." See Plaintiff's Memo. of Law at p. 4-5. To the extent that he implies that he submitted his expense reports on a timely basis or that he reported all of the charges on his Charge Card on T & E Reports, BMS disputes this fact. See Everk Aff. ¶¶ 6, 9-12; Gachago Aff. Ex. 6; Plaintiff's Memo. of Law at p. 10, n.3.

In paragraph nine of Plaintiff's Statement, he states that he paid American Express directly for all "non-business" charges. See Plaintiff's Memo. of Law at p. 5. To the contrary, Plaintiff failed to pay $1,490.81 in card charges for "non-business" charges. These charges included the charges he failed to submit on his T & Reports for reimbursement (presumably personal), delinquency charges, or charges that were submitted on a T & E Report but rejected for reimbursement because they were deemed to be non-reimbursable expenses. See Everk Aff. ¶¶ 11, 12, 13 & Tabs D, E, F.

In paragraph seventeen of Plaintiff's Statement, he states that at the time he terminated his employment with the Company, BMS did not notify him regarding any missing expense reports or charges submitted for "non-business purposes," nor did BMS withdraw any "past due" amounts from his final paycheck. See Plaintiff's Memo. of Law

8

at p. 5.  The Company had no duty to account for the outstanding balance on his Charge Card at the time of his departure from the Company.  Instead, it was Plaintiff's responsibility to audit his charge card statements and T & E Reports and submit any charges on an expense report.  See Everk Aff. ¶ 17, Tab J.  Any charges not submitted on a T & E report were the sole responsibility of payment by Mr. Gachago directly to American Express.  See id.; Everk Aff. ¶ 5, Tab A at p. 5.  As well, the Company had notified him regarding any submitted expenses that were non-reimbursable.  See Everk Aff. ¶ 7, 13, Tab F.  Further, BMS did not withhold any "past due" amounts from his pay check or bonus because the Company had not paid or guaranteed any charges that were found to have been incurred by Plaintiff for personal/non-business purposes, and had no responsibility to Plaintiff to withhold funds and pay his American Express Statement.  See Gachago Aff., Ex. 2 (Charge Card Program Agreement at ¶ II(d)); Everk Aff. ¶ 3, Tab A.

In paragraph eighteen of Plaintiff's Statement, he states that BMS did not pay the remaining balance on his Charge Card.  See Plaintiff's Memo. of Law at p. 6.  In fact, the Company has paid the outstanding balance on his Charge Card under a reservation of rights.  See Slattery Aff.

In paragraph nineteen of Plaintiff's Statement, he states that he suffered financial damages following his departure from BMS as the result of the nonpayment of his Charge Card and the effect on his personal credit rating.  See Plaintiff's Memo. of Law at p. 6.  The outstanding balance on Plaintiff's Charge Card was self-evident at the time he left the Company.  See Everk Aff. ¶¶ 2, 9, 10, Tabs B, C; Amended Complaint, Ex. 3.  Plaintiff failed to pay the balance due on his Charge Card or audit his T & E Reports and

American Express statements and submit outstanding business charges to the Company for reimbursement pursuant to Company policy. Accordingly, any resulting damages are Plaintiff's sole responsibility. See Everk Aff. ¶¶ 2-13, 17, 18, 19, Tab J. Again, BMS reserves the right to supplement this response at the close of discovery.

## ARGUMENT

Plaintiff was an at-will employee of BMS. See Plaintiff's Statement of Undisputed Material Facts at ¶ 1. As a result, no express contract governed his employment relationship with the Company. Likewise, there was no express contract between Plaintiff and BMS whereby the Company agreed to be liable for payment of the charges on Plaintiff's Charge Card. The only express contract regarding Mr. Gachago's Charge Card was the Charge Card Program Agreement between him and American Express, in which he agreed to be liable for payment of all charges to the Charge Card. As set forth below, he can point to no Company policy or guideline, let alone an express agreement, that provides that BMS is liable for those charges. Consequently, his claim for breach of contract fails and should be dismissed. See Doyle v. Hasbro, Inc., 103 F.3d 186, 194-95 (1st Cir. 1996); Williams v. Astra USA, Inc., 68 F.Supp.2d 29, 37 (D. Mass. 1999); Gibbs v. SLM Corp., 336 F. Supp.2d 1, 16 (D. Mass. 2004).

Plaintiff contends, however, that Company policy constituted an enforceable express contract between the parties regarding his Charge Card. See Plaintiff's Memo. of Law at p. 6. Even if Company policy may form the basis for an express contract, the Expense Policy and Guidelines cited by the Plaintiff do not provide that BMS is responsible for payment of his American Express statements. Stated another way, under

Massachusetts law, the employee is only entitled to whatever rights an employment manual, or in this case arguably Company policy, sets forth. See O'Brien v. New England Telephone & Telegraph Co., 422 Mass. 686, 690-695 (1995)(employee who did not follow applicable grievance procedure set forth in her employer's personnel manual was not entitled to maintain action against employer for wrongful termination). To the extent that the Expense Policy and Guidelines could even be construed as a contract, Mr. Gachago has no greater rights than those set forth in the policy. See id. at 690. Plaintiff can point to no provision in the Company Expense Policy and Guidelines that shifts the responsibility for reporting charges on a T & E Report for reimbursement, payment of delinquency fees, or payment of non-reimbursable, personal charges from him to the Company. Accordingly, his contract claim should be dismissed. See Doyle, Williams, and Gibbs, *supra*.

Moreover, remedies provided by Company policy must be exhausted before an employee may resort to the courts under this theory. See O'Brien at 695-696. Mr. Gachago flatly refused to submit to the Company's audit procedure to rectify the outstanding balance on his Charge Card. See Everk Aff. at ¶¶ 17, 19, Tab J; Amended Complaint ¶38. Accordingly, under Massachusetts law, summary judgment should be awarded to the Company, not to Plaintiff. See O'Brien, *supra*.

Plaintiff's own course of conduct in turning a blind eye to the balance on his Charge Card, and in failing to heed the clear Company policy and guidelines, as well as the express terms of the Charge Card Program Agreement, does not create an enforceable contract with his employer. To the extent that Plaintiff could even assert enough evidence to get over the motion to dismiss hurdle on an implied contract theory, summary

judgment should be denied as a material factual issue exists as to whether such an implied contract existed between the parties.  See General GMC, Inc. v. Volvo White Truck Corp., 918 F.2d 306 (1st Cir. 1990) (genuine issue of material fact existed as to whether implied contract existed between manufacturer and dealer prior to formation of joint venture based on party's course of dealing precluding summary judgment).

      The evidence in the record demonstrates that Plaintiff did not perform his obligations under both the Charge Card Program Agreement and Company policy and guidelines.  The balance due to American Express in the amount of $1083.50, which has been paid by BMS under a reservation of rights, consisted of charges that Plaintiff never submitted on a T & E Report for reimbursement, delinquency charges, and charges that were submitted but deemed non-reimbursable expenses.  Under the clear provisions of the Charge Card Program Agreement, Cardmember Agreement, and Expense Policy and Guidelines, Mr. Gachago was responsible for paying American Express directly for these charges.  As a result, Plaintiff can not sustain his burden of proving Defendant's breach of a purported contract or damages as a matter of law, and his motion should be denied. See O'Connell Management Co., Inc. v. Caryle-XIII Managers, Inc., 765 F. Supp. 779, 783 (D. Mass. 1991) (issue whether party substantially complied with the terms of an agreement or whether the actions of a party constitute a material breach is a question of fact); See Dr. Franklin Perkins School v. Freeman, 741 F.2d 1503, 1519 (1984) (party to contract is entitled only to the value of the contract and can not be put in a better position than if the contract had been completely carried out).

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment on his Breach of Contract Claim (Count 1) should be denied.

Respectfully submitted,
BRISTOL-MYERS SQUIBB COMPANY
By its attorney,


__/s/ Eve Slattery_____
Eve Slattery (BBO #634776)
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000

Dated: October 11, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon attorney of record for the Plaintiff by first-class mail on October 11, 2005.

 _/s/ Eve Slattery_____
Eve Slattery