UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10141-RGS

JOHN GACHAGO

v.

BRISTOL-MYERS SQUIBB COMPANY

MEMORANDUM AND ORDER ON
DEFENDANT BRISTOL-MYERS SQUIBB COMPANY'S
MOTION TO DISMISS THE AMENDED COMPLAINT AND
PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON COUNT I - BREACH OF CONTRACT

December 8, 2005

STEARNS, D.J.

John Gachago brought this action seeking direct and consequential damages from his former employer, Bristol-Myers Squibb Company (BMS), for its alleged failure to reimburse business charges incurred on his corporate American Express card. BMS moves to dismiss the Amended Complaint for failure to state a viable cause of action. Conversely, Gachago asserts that there exists no genuine issue of material fact as to his breach of contract claim, and that he is therefore entitled to summary judgment as a matter of law.

BACKGROUND

In May of 2000, Gachago began employment with BMS as a Territory Business Manager. Approximately two years later, he obtained a corporate American Express card for business use. Gachago signed a standard "Agreement Between Corporate Cardmember and American Express Travel Related Services, Inc.," which obligated him

as follows.

> You as the Corporate Cardmember are responsible for all Charges billed to your account. All business charges are to be reported to the Company for expense report processing in accordance with Company policy. All business Charges billed to the Corporate Card which are reimbursable by the Company will be paid by you or paid directly by the company under the company's expense procedures applicable to you. You, as the Corporate Cardmember, are accountable for any reimbursements and agree to remit such funds to us promptly. This Agreement has no effect on such procedures or your right to reimbursement or payment by the Company. To the extent that you, as Corporate Cardmember, fail to honor any of the obligations under this Agreement, we reserve the right to collect the amount of such Charges directly from you.

Gachago also signed an "American Express Corporate Charge Card Program Agreement," in which he "agree[d] to be liable for payment of all charges to the Card in accordance with the terms of the Agreement." While the primary purpose of the card was for conducting business, Gachago occasionally used the card for personal expenses.

American Express sent its monthly billing statement directly to Gachago's home. Gachago in turn submitted expense reports to BMS, which paid American Express for any approved business expense. Gachago paid his personal charges directly to American Express.

On April 27, 2004, Gachago resigned from BMS to go to work for a competitor, Astra Zeneca.[1] He submitted his last expense report to BMS on April 30, 2004 (which BMS paid). When Gachago left BMS, the outstanding balance on his American Express card amounted to $1,595.47. On August 27, 2004, after receiving a dunning message from American Express, Gachago contacted BMS "in an attempt to get BMS to acknowledge

---

[1]Gachago attempted to give BMS four weeks notice of his intent to "pursue other interests." BMS gave Gachago a termination date of May 3, 2005.

2

liability." A few days later, American Express put a hold on the card that Gachago had obtained for use at Astra Zeneca.

On September 2, 2004, Cathleen Everk, the BMS Travel Card Administrator, advised Gachago that because his final expense report had been submitted and paid, he was required to reconcile his account and file a supplemental expense report. Everk sent Gachago his past American Express statements and expense reports along with instructions for obtaining any reimbursements that were due. Gachago agreed to submit the reconciliation if American Express were to release the hold on his current charge card.[2] BMS contacted American Express on Gachago's behalf and the hold was removed. For whatever reason, Gachago failed to submit the reconciliation and reimbursement request to BMS.

Gachago states that when he attempted to refinance his home in late November of 2004, he found the late payment owed to American Express listed on his credit report.[3] Gachago contends that as a result, he was unable to refinance his present home. He was also unable to obtain financing to purchase a new home in Florida and to close on a real estate investment in Kenya.

Gachago filed this lawsuit against BMS in the Quincy District Court in Norfolk County on December 20, 2004. Defendants removed the case to this court on January 24,

---

[2] Specifically Gachago told Everk in an email that "[d]espite the outrageous amount of time it may take I don't have a problem reconciling my statements if the hold on my current card is eliminated." See Gachago Aff., Ex. 11.

[3] At the court's suggestion, BMS paid the outstanding balance to American Express under a reservation of rights in September of 2005.

3

2005.[4]  The Amended Complaint contains the following Counts: Count I - Breach of Contract; Count II - Violation of the Implied Covenant of Good Faith and Fair Dealing; Count III - Intentional Interference with a Contract;[5] Count IV - Violation of the Fair Credit Reporting Act; and Count V - Intentional Interference with an Employment Relationship. Gachago contends that the balance owed on his former corporate American Express card is the responsibility of BMS.  BMS argues that to the extent the charges are not personal, Gachago has refused to submit an expense report documenting any claimed business expenses, as company policy requires.

## DISCUSSION

To prevail on a motion to dismiss, BMS must demonstrate that Gachago has failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  On Gachago's motion for summary judgment, he must show that there is no genuine issue as to any material fact and so he is entitled to a judgment against BMS on the breach of contract claim as a matter of law.  Fed. R. Civ. P. 56(c).

BMS argues that Gachago's motion for summary judgment on Count I of the Amended Complaint fails as the outstanding charges are his responsibility.  According to BMS, from August of 2002 to May of 2004, Gachago submitted a total of $1,565.83 in claimed business expenses that were rejected by BMS.  BMS asserts that any overage in the outstanding balance is the result of late fees imposed because of Gachago's failure

---

[4] Gachago also sued American Express.  The court dismissed American Express as a defendant at the onset of the litigation.

[5] Gachago accedes to the dismissal of this Count.

to keep the personal side of his account current. Gachago counters that "all 'disputed charges' were deemed 'for business purposes' and paid for by BMS." Gachago Aff. ¶ 6. Gachago also states that on two occasions he was contacted by American Express regarding late fees "due to a late payment by BMS." Gachago Aff. ¶¶ 6 and 8. BMS contends that its Expense Policy and Guidelines make clear that late fees and finance charges are not reimbursable expenses. See Everk Aff. ¶ 6.

Putting aside the issue of whether the outstanding balance owed to American Express consists of legitimate business expenses or not (a matter which is contested),[6] there is no dispute that the American Express Corporate Cardmember Agreement obligated Gachago personally to pay any balance owing to American Express. There is also no dispute that BMS had a stated policy (of which Gachago was aware) that "should an employee leave the Company without reconciling their [expense reports] and American Express statements, the employee is responsible for payment of any charges that have not been accounted for on [an expense report]." Everk Aff. ¶18. Finally, it is undisputed that BMS provided Gachago with copies of his expense reports, his charge statements, and the company Audit Policy. Everk told Gachago that he "needed to review the paperwork and submit an expense report for reimbursement of any charges that had not been previously

---

[6]While Gachago offers only broad assertions that the disputed charges are proper business expenses, BMS has submitted copies of all of Gachago's charge card statements, his expense reports, and BMS's own audit lists, including an accounting of the delinquency charges ($207.71), the non-reimbursable business expenses submitted on expense reports ($1,565.83), and the unidentified expenses appearing on Gachago's American Express statements ($1,655.23). BMS also lists duplicate charges submitted on the expense reports ($86.61), and out-of-pocket expenses that BMS reimbursed directly to American Express ($320.70). By BMS's computations, Gachago is responsible for the entire outstanding balance to American Express.

5

expensed on [an expense] Report," and that "Gachago did not thereafter submit an expense report to the Company." Everk Aff. ¶ 19.

Both parties have submitted a raft of financial and contract documents and other materials extrinsic to the pleadings in addition to the numerous documents attached by Gachago to the Amended Complaint. Accordingly, the court will treat the competing motions as cross-motions for summary judgment.[7] See Collier v. City of Chicopee, 158 F.3d 601, 603-604 (1st Cir. 1998). Because there is no dispute that Gachago defaulted on his agreement with American Express and failed to comply with BMS's expense reimbursement policy, he has no viable claim against BMS.[8]

## ORDER

---

[7]At the dispositive motion hearing, counsel represented that discovery is not complete. If the parties have additional evidence that they would like to file with the court, or to request additional time under Fed. R. Civ. P. 56 (f) to obtain discovery which relates to the issues presented in these motions, the court will provide the parties ten days to do so.

[8]The "contract" with BMS that Gachago has in mind is not altogether clear. His opposition memorandum alludes to an "implied" contract or a "contract by conduct." An implied contract typically arises where a person accepts services or other benefits knowing that they are not being furnished gratuitously and then refuses to pay. See Popponesset Beach Association, Inc. v. Marchillo, 39 Mass. App. Ct. 586, 592 (1996). Assuming that the expense account reimbursement procedure established by BMS could be squeezed into a theory of implied contract (it is not so alleged in the Amended Complaint), it is doubtful that Gachago could show damages of any significance. "[D]amages must be the direct, natural result of the breach, and to have been in the contemplation of the parties when the contract was made as the probable result of such breach." Greany v. McCormick, 273 Mass. 250, 253 (1930). It is highly unlikely that any reasonable finder of fact could conclude that the parties would have reasonably anticipated that their squabble over an expense account would in Palsgraf-like fashion result in the undoing of a real estate deal in Kenya. The unavoidable conclusion is that Gachago by his failure to discharge his personal obligations to American Express was the author of his own harms.

The motion to dismiss will be converted to one for summary judgment and will be provisionally <u>ALLOWED</u>.  Gachago's Motion for Summary Judgment on Count I of the Complaint is <u>DENIED</u>.[9]  The court will withhold entering judgment for ten (10) days in order to provide the parties time to submit additional evidence or to identify a valid reason to conduct further discovery.

                        SO ORDERED.

                        /s/ Richard G. Stearns

                        _____
                        UNITED STATES DISTRICT JUDGE

---

[9] The court notes with some dismay the escalation of a petty dispute over an expense account into a federal case which has cost the parties and the court far more in time and expense than any possible recovery by Gachago or vindication of principle by BMS.  The court is left with the impression that this lawsuit is collateral damage emanating from an unpleasant divorce.